IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| YVONNE R. MEREDITH, | * | Chapter 7 |
|     Debtor | * | |
| | * | |
| YVONNE R. MEREDITH, | * | |
|     Movant | * | Case No.: 1-12-bk-06283-MDF |
| | * | |
| v. | * | |
| | * | |
| | * | |
| VANDERBILT MORTGAGE and | * | |
| FINANCE, INC., | * | |
|     Respondent | * | |

## OPINION

Before me is the motion of Yvonne R. Meredith ("Debtor") for redemption of a 1998 Commodore Genesis NR522A manufactured home (the "Genesis").[1] In her motion, Debtor seeks to redeem the Genesis for $15,000 in full satisfaction of the lien held by Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt"). For the reasons that follow, I conclude that Debtor may redeem the manufactured home by paying Vanderbilt $18,000 in full satisfaction of its claim.

### I. Procedural Background

On October 26, 2012, Debtor filed the above-captioned Chapter 7 bankruptcy case. The Genesis was included in her schedules of assets with a value of $10,000. Vanderbilt was listed as a secured creditor with a mortgage secured by the Genesis in the amount of $26,107.21.

---

[1] The term "manufactured housing" refers to a structure that conforms to federal standards established and administered by the United States Department of Housing and Urban Development. Under §308(c) of the Housing and Community Development Act of 1980, Pub. L. No. 96-399, § 308, 94 Stat. 1614, 1640-41 (1981), the term "manufactured home" was substituted for "mobile home" in various federal statutes regulating the manufacture and sale of these units. James Milton Brown, *Manufactured Housing: The Invalidity of the "Mobility' Standard*, 19 Urb. Law. 367, 399 (1987). Having been manufactured in 1998, Debtor's mobile home is more properly referred to as a "manufactured home." The terms "mobile home" and "manufactured home" are used interchangeably in this Opinion.

On May 14, 2013, Debtor filed the motion before me to redeem the Genesis by paying Vanderbilt the lump sum of $15,000. On May 31, 2013, Vanderbilt answered Debtor's motion countering that the mobile home should be valued at $25,000 and that Debtor should be required to pay this amount if she wanted to redeem the property.

On July 9, 2013, a hearing was held to determine the value of the Genesis for purposes of redemption. The matter is ready for decision.[2]

## II. Factual Findings

In November 1999, Debtor purchased the Genesis with a $32,335 loan from Vanderbilt secured by a lien on the title. At the time of the hearing in this matter, the Genesis was located on a rented lot in a mobile home park outside of Chambersburg in Hamilton Township, Franklin County, Pennsylvania.

To assist in establishing the value of Vanderbilt's collateral, Debtor and Vanderbilt each provided the testimony of an appraiser. Debtor's appraiser, Tim Ausherman ("Ausherman"), inspected the interior and exterior of the manufactured home and produced a report dated February 6, 2013. Ausherman is an experienced real estate appraiser having worked as both an appraiser and a broker for forty-three years. He testified that he appraises approximately 300 to 500 homes per year, including approximately ten to fifteen mobile homes. To determine the value of the Genesis, Ausherman considered both the cost approach and the sales comparison approach, but he relied primarily on the sales comparison approach. For the cost approach,

---

[2]I have jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (K) and (O). This Opinion contains the findings of fact and conclusions of law required by Fed. R. Bankr. P. 7052 which is made applicable to contested matters by Fed. R. Bankr. P. 9014(c).

2

Ausherman used the Marshall & Swift Cost Handbook and found that the depreciated replacement cost of the Genesis was $21,307. To calculate the value under the sales comparison approach, Ausherman compared the Genesis to three other single mobile homes located within one-half mile of the subject that had been sold during the prior year. Two of the comparable sales involved mobile homes also manufactured by Commodore and a third comparable was a mobile home whose manufacturer Ausherman could not identify.

The Genesis has six rooms – a kitchen and living room, three bedrooms and two full baths.[3] It also has an attached carport and deck. The bottom portion of the trailer is surrounded by decorative metal or vinyl skirting. Comparable #1, also manufactured by Commodore, is the same size as Debtor's home and has similar features, but it is nine years older. The second and third comparables are approximately 100 square feet smaller than the Genesis, each having only one bathroom. Both of these smaller units are also older than the Genesis. Comparable #2 was manufactured in 1992, and Comparable #3 was manufactured in 1990. None of the mobile homes used as comparables were identified as being the same model as the Genesis. Ausherman characterized Comparable #1 as being in "good" condition while the other units were characterized as "average." He characterized Debtor's home as being in "average" condition. Ausherman testified that Debtor's home and Comparable #1 were "as close as you could get" in similarity. After adjusting the sale prices for differences between Debtor's home and the

---

[3] The appraisal report submitted by Debtor's appraiser describes the Genesis as being 76 feet in length and Vanderbilt's appraiser describes the unit as being 80 feet in length.

3

comparables selected, Ausherman concluded that the fair market value of Debtor's home was $15,000.

Laurence R. Checca ("Checca") performed an appraisal on behalf of Vanderbilt on February 27, 2013. He also inspected the interior and exterior of Debtor's home and interviewed Debtor. Checca has been certified to perform manufactured housing appraisals since 1996 and appraises between ten and fifteen manufactured homes per month. He is affiliated with several trade associations related to manufactured housing in Maryland, Virginia, and the northeast generally.

Checca testified that he relied solely on the cost approach in preparing his appraisal. He testified that he uses the National Appraisal System, which is product of NADA Guides. Although he testified that he was using the cost approach, he described the data he was using as having been derived from sale values of Genesis manufactured homes from Pennsylvania. Using the National Appraisal System, he appraised the value of the Genesis at $24,968. Checca arrived at this value by adding to the adjusted base value of the unit as established in the NADA Manufactured Housing Guide ("the NADA Guide") various additional components and accessories not included in the base value while deducting costs of repairs and missing components. He stated that he did not use the sales comparison approach because he thought the adjustments would exceed appraisal standards and because lenders prefer the cost approach as reflected in the NADA Guide.

### III. Discussion

Redemption of property in a Chapter 7 bankruptcy case is governed by 11 U.S.C. § 722. An individual debtor may redeem tangible personal property from a lien securing a dischargeable

4

Case 1:12-bk-06283-MDF    Doc 52    Filed 08/28/13    Entered 08/29/13 08:53:58    Desc
Main Document      Page 4 of 8

consumer debt, if the property is exempt under § 522 or has been abandoned under § 554, by paying the lienholder the amount of the allowed secured claim in full at the time of redemption. 11 U.S.C. § 722. The value of the lienholder's allowed secured claim is determined under § 506(a). Section 506(a)(2) provides that the value securing an allowed claim is determined based on "the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing." 11 U.S.C. § 506(a)(2). When a Chapter 7 or Chapter 13 debtor has obtained property for personal, family, or household purposes, replacement value is "the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time the valuation is determined." *Id.*

The definition of replacement value in § 506(a), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, is derived from *Associates Commercial Corp. v. Rash*, 520 U.S. 953 (1997). In *Rash*, the Supreme Court established the standard for valuing property retained when a debtor bifurcates the claim of a secured creditor for purposes of "cramdown" in a Chapter 13 case. The Court determined that the value is the "cost the debtor would incur to obtain a like asset for the same proposed use." *Id.* at 963. When the Bankruptcy Code was amended in 2005, replacement value as set forth in *Rash* was adopted for use in other contexts in which collateral securing a claim is valued, including redemption under § 722. Accordingly, in order to determine the value at which Debtor may redeem the Genesis, I must determine the price a retail merchant would charge for a 1998 Commodore Genesis NR522A manufactured home considering the age and condition of the property on the date of the hearing.

There are several appropriate methods to determine the value of collateral under § 506(a) and often appraisers use a combination of methods. Debtor's appraiser relied on the comparable

5

sales approach, which is the most commonly used method to value residential real estate. *See In re Jones,* No. 03-84129, 2004 WL 298612, *2 (Bankr. C.D. Ill. February 5, 2004) *citing* Miller and Gallagher, *Residential Real Estate Appraisal* 232 (3rd ed.1998). Although it is undisputed that the Genesis is Debtor's home, for purposes of redemption the manufactured home must be valued as personal property. Real estate may not be redeemed under § 722.

Applying the standard of § 506(a)(2), the value to be established for redemption purposes is the price a retail merchant would charge for a similar manufactured home of a comparable age and condition. Commercial guides as to value, such as the NADA Guide used by Checca, are frequently relied upon when establishing the replacement value of personal property, particularly motor vehicles. *In re Henry*, 457 B.R. 402, 413 n. 9 (Bankr. E.D. Pa. 2011) (citing cases). Similar considerations apply when commercial guides are used to determine the replacement value of manufactured housing. However, as with motor vehicles, these guides while useful, "must be used with caution and are not conclusive because they are 'unable to account for the myriad of facts that may be peculiar to a debtor's particular [property].'" *Id. quoting In re Wcislak*, 417 B.R. 24, 29 (Bankr. N.D. Ohio 2009).

The Court notes that the National Appraisal System worksheet that was used by Checca to prepare his appraisal directs that both the NADA Guide and the sales comparison approach be considered to establish value. The general instructions on Form #2 of the worksheet state:

> The N.A.D.A. Manufactured Housing Appraisal Guide is the modified summation approach to value. Values reflected in the publication are based on market data received from a variety of sources in the nine N.A.D.A. regions, and these values represent a sited (delivered and set-up) structure in current year depreciated replacement retail dollars. In the absence of local, reliable, similar comparable sales data, the values are considered to be **FAIR MARKET RETAIL VALUES**.

Case 1:12-bk-06283-MDF    Doc 52    Filed 08/28/13    Entered 08/29/13 08:53:58    Desc
Main Document    Page 6 of 8

(emphasis in original). The worksheet further states that when reliable data is available, comparable sales should be considered to adjust the NADA Guide retail value. Checca did not complete this section of the worksheet. Other than his general statement that he did not use the sales comparison approach, Checca did not explain why he thought it appropriate to diverge from the instructions on the worksheet.

It is the Court's conclusion that the appraisals offered by both Checca and Ausherman are helpful in establishing the value of the Genesis under § 506(a). Ausherman's appraisal based on the sales comparison approach more accurately gauges the value that can be obtained in the suburban Pennsylvania location where the Genesis is located. Unlike a motor vehicle, the value of a manufactured home can be affected more profoundly by its location. Checca conceded that it would cost approximately $10,000 to $12,000 to move the Genesis to another location. Therefore, the retail value of a 1998 Commodore Genesis manufactured home is influenced by its location in Franklin County and the sales of comparable units in the area.

Checca testified that it was his opinion that the comparable sales used by Ausherman were not truly comparable because he could not verify whether these units were of the same quality as Debtor's home. He testified that there were significant improvements in the construction of manufactured homes after 1994, but did not specify why Debtor's home was superior to Ausherman's comparable units, which were built before 1994. Without further evidence as to how Ausherman's comparables were inferior to the subject, the Court can give little weight to this general observation.

Two of the sales used in Ausherman's appraisal occurred within the same mobile home park in the year before the appraisal. All comparable units were single wide, and two were

7

Case 1:12-bk-06283-MDF    Doc 52    Filed 08/28/13    Entered 08/29/13 08:53:58    Desc
Main Document    Page 7 of 8

manufactured by Commodore. Based upon the description of the units in Ausherman's appraisal and his testimony, I find that the sales were sufficiently comparable to be used in establishing the value of the Genesis. However, as illustrated by Ausherman's depreciated replacement cost of $21,307, which he also calculated but did not consider in establishing value, the $15,000 figure may be too low. The broader sampling of sales available through the NADA Guide used by Checca as well as Ausherman's own replacement cost assessment suggest that the replacement value of the Genesis is greater than $15,000.

Accordingly, considering all the evidence presented, the Court finds that the value of the Genesis for purposes of redeeming the property to be $18,000. Debtor may redeem the Genesis by paying Vanderbilt the sum of $18,000 within thirty days of the date of the accompanying Order.

By the Court,

_____
Mary D. France
Chief Bankruptcy Judge

Date: August 28, 2013